UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:14CR91 AGF (DDN) |
| ) | |
| JODY GOLDSBERRY, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

COMES NOW the United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Cristian M. Stevens, Assistant United States Attorney for said District and, for its response to defendant's motion to suppress evidence and statements, states as follows:

**I.   INTRODUCTION**

In his motion to suppress evidence and statements, defendant Jody Goldsberry ("defendant") generically argues: 1) any statements by defendant should be suppressed, because they were coerced, were uttered without the benefit of Miranda rights, and resulted from an illegal arrest; 2) any evidence resulting from defendant's ill-gotten statements should be suppressed; and 3) any physical evidence should be suppressed, because it resulted from illegal intrusions on defendant's Fourth Amendment rights without a valid search warrant or other legal justification.

Defendant's proffered bases for suppressing his statements and the physical evidence largely are inapplicable to this case.   Defendant did not utter any statements to law enforcement officers, and the Government does not intend to offer any statements by defendant into evidence at

1

trial.

While defendant is correct that physical evidence was seized from his residence at 9821 Goldman Road, the evidence lawfully was discovered and seized when sheriff's deputies and other emergency personnel responded to defendant's shooting of his 80-year-old mother at their shared residence. Defendant's mother, the owner of the residence, voluntarily consented to a search of the residence. Furthermore, exigent circumstances clearly supported the responding officers' entry into, and protective sweep of, the residence. While securing the residence, the officers found, among other things, spent shell casings, blood spatter, numerous firearms, including a .50 caliber rifle, large quantities of various calibers of live ammunition, and documents establishing that defendant resided at the residence.

## II.   STATEMENT OF FACTS

On January 29, 2014, deputies with the Jefferson County Sheriff's Department responded to 911 calls for a shooting at 9821 Goldman Road, in Jefferson County, within the Eastern District of Missouri. The residence at 9821 Goldman Road is a single-family residence surrounded by various neighbors' residences in close proximity.

The 911 calls were entirely inconsistent. In the first call, a male caller stated that his mother was shot, the bullet came through the kitchen window, the caller was with the victim, Lillian Goldsberry, at 9821 Goldman Road, and the shooting just occurred. In the second call, Lilian Goldsberry claimed she accidentally shot herself, her son was mistaken about the bullet coming from outside, and she shot herself with a rifle in the bedroom.

When sheriff's deputies and fire department personnel responded minutes after the 911 calls, they found victim Lillian Goldsberry just outside the residence. Lillian Goldsberry was

approximately 80 years old and was suffering from a gunshot wound to her left arm. She stated that she accidentally shot herself with a .22 caliber rifle in the bedroom. Deputy David Fischer requested Lillian Goldsberry's consent to search the residence to secure the firearm. She consented and directed Deputy Fischer to the front door.

Deputy Fischer and detectives entered 9821 Goldman Road, where they conducted a protective sweep for any suspects, other victims, and the firearm used to shoot Lillian Goldsberry.

In the kitchen, they found a spent .45 caliber shell casing on the floor. Notably, the shell casing was not a .22 caliber as Lillian Goldsberry reported, and the shell casing was found in the kitchen, not in the bedroom. Furthermore, there was blood spatter in the kitchen, as opposed to the bedroom. There was no damage to the kitchen window suggesting that the bullet had entered from outside. On top of the refrigerator, in plain view, the investigators found a Rohm .22 caliber revolver loaded with 5 rounds.

In the back bedroom, the investigators found an apparently homemade .50 caliber rifle standing in the corner of the room in plain view. They also recovered several rounds of .223 caliber ammunition under the bed and two cases of Wolf ammunition in the closet, the door of which was open.

In the master bedroom, the investigators found a loaded Remington .22 caliber rifle, a Remington 16 gauge shotgun, a loaded Marlin 30-30 rifle, and a Central Arms Co. 12 gauge shotgun under the bed. They found various boxes of shotgun shells and other ammunition in the dresser.

In the basement family room, they discovered, in plain view, a spent .50 caliber shell casing and an instruction manual and VHS tape regarding how to build a .50 caliber rifle.

Although the investigators found mail addressed to defendant at 9821 Goldman Road and

defendant's state identification card in plain view on the dining room table, defendant was nowhere to be found.

Lillian Goldsberry was transported by ambulance to the hospital and ultimately recovered from the gunshot wound to her left arm.

### III.   ARGUMENT

**A.   The Officers Entered and Searched the Residence Pursuant to Voluntary Consent.**

Lillian Goldsberry voluntarily consented to the search of 9821 Goldman Road and pointed the responding officers to the front door.   As the legal owner and resident of 9821 Goldman Road, she had actual and apparent authority to consent to the search.   See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); United States v. Farnell, 701 F.3d 256, 262-63 (8th Cir. 2012); United States v. Hernandez, 299 F.3d 984, 990 (8th Cir. 2002).

Lillian Goldsberry's consent clearly was voluntary.   The totality of the circumstances establishes that she was an adult woman at the time of the search.   No evidence suggests that she was mentally unstable, intoxicated, or under the influence of drugs when she consented.   See United States v. Dunning, 666 F.3d 1158, 1165 (8th Cir. 2012); United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990).   Although she was not advised of her Miranda rights before consenting, she obviously was a victim, not a suspect.   She was not threatened or coerced and did not rely on any promises or misrepresentations by the officers.   Lillian Goldsberry did not attempt to stop the search at any time.   See Dunning, 666 F.3d at 1165.   Finally, she obviously was not in custody or under arrest, and was at her own home, not at a police station or in a police car, when she consented to the search.   See id.; United States v. Beatty, 170 F.3d 811, 814 (8th Cir. 1999).

For these reasons, the responding officers properly entered and searched 9821 Goldman Road pursuant to Lillian Goldsberry's voluntary consent.

4

**B.   The Officers Entered the Residence Pursuant to Exigent Circumstances.**

The exigencies presented in this case are apparent.   The Jefferson County Sheriff's Department received inconsistent 911 calls reporting a shooting at 9821 Goldman Road.   The calls, one of which was from a male caller, indicated either that someone had shot the victim or the victim shot herself.   That the calls were made by two different individuals indicated that more than one person was present at the residence during the shooting.

When the first responders arrived, they found Lillian Goldsberry outside the residence suffering from a gunshot wound.   The firearm used to shoot her was not in the immediate vicinity, and apparently remained inside the residence, along with the male caller and possible shooter. Other houses were located near the residence, which implicated the safety of Lillian Goldsberry's neighbors, not to mention the fire department and ambulance personnel treating her.

The exigent circumstances exception to the warrant requirement justifies immediate police action without a warrant in circumstances in which the safety of law enforcement officers or others is threatened.   See Warden v. Hayden, 387 U.S. 294, 298-99 (1967); United States v. Goodrich, 739 F.3d 1091, 1096 (8th Cir. 2014); United States v. Francis, 327 F.3d 729, 735 (8th Cir. 2003). Where law enforcement officers reasonably perceive a danger to themselves or to others from the possibility of an armed suspect inside a residence, the Eighth Circuit repeatedly has held that exigent circumstances justify entry into the premises.   See, e.g., Goodrich, 739 F.3d at 1096; United States v. Hill, 430 F.3d 939 (8th Cir. 2005); United States v. Kuenstler, 325 F.3d 1015, 1019-1022 (8th Cir. 2003); United States v. Vance, 53 F.3d 220 (8th Cir. 1995); United States v. Arcobasso, 882 F.2d 1304, 1306-07 (8th Cir. 1989); United States v. Antwine, 873 F.2d 1144,

5

1146-47 (8th Cir. 1989).[1]

## C.  The Officers Entered the Residence to Conduct a Protective Sweep.

Similarly, the officers' entry into the residence may be characterized as a protective sweep for possible suspects and other victims.  See generally Maryland v. Buie, 494 U.S. 325, 336 (1990); United States v. Clayton, 210 F.3d 841, 845 (8th Cir. 2000); United States v. Boyd, 180 F.3d 967, 975-76 (8th Cir. 1999).  "A protective sweep is permitted under the Fourth Amendment when an officer has articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the . . . scene."  United States v. Crisolis-Gonzalez, 742 F.3d 830, 836 (8th Cir. 2014) (quoting Buie, 494 U.S. at 334).

In cases such as this, the Eighth Circuit has concluded the entry into the premises was proper pursuant to not only exigent circumstances, but also as a protective sweep.  See Vance, 53 F.3d at 221-22 (noting district court's conclusion that search was justified as protective sweep, and affirming on basis that search was justified by exigent circumstances); United States v. Kaylor, 877 F.2d 658, 664 (8th Cir. 1989) (holding police properly executed a "protective sweep search" of basement because officers had arrested suspects in front of the residence, possibly alerting others inside the residence, and officers reasonably suspected that the defendant kept a gun, which could have been used against the officers, in the basement).

---

[1]  Similarly, the Eighth Circuit has recognized that a police officer has "a right to be on the premises as part of his routine community caretaking functions," including responding to a report of a crime in progress.  United States v. Singer, 687 F.2d 1135, 1144 (8th Cir. 1982), adopted in pertinent part, 710 F.2d 431, 432 (8th Cir. 1983) (en banc); see also United States v. Johnson, 9 F.3d 506, 510 (6th Cir. 1994) (citing Singer, 687 F.2d at 1144); United States v. Nord, 586 F.2d 1288, 1290-91 (8th Cir. 1978).

**D.   The Evidence in the Residence Was in Plain View.**

Pursuant to the plain-view doctrine, police may seize evidence when: (1) the police properly arrived at the location from which they viewed the evidence; (2) the incriminating character of the evidence is immediately apparent; and (3) the police have a lawful right of access to the evidence itself.  See Coolidge v. New Hampshire, 403 U.S. 443 (1971) (plurality opinion); United States v. Varner, 481 F.3d 569, 572 (8th Cir. 2007); United States v. Poe, 462 F.3d 997, 1001-02 (8th Cir. 2006).

As already established, the officers properly arrived at the location from which they viewed the evidence in the residence and had a lawful right of access to the evidence.   Inside the residence, the officers observed in plain view evidence, the incriminating nature of which was immediately apparent.   After receiving 911 calls reporting a shooting and finding Lillian Goldsberry suffering from a gunshot wound, the officers found spent shell casings, blood spatter, numerous firearms, and various rounds of ammunition in plain view in locations in which they were permitted to look for possible suspects, other victims, and the loaded firearm used to shoot Lillian Goldsberry.   See Hill, 430 F.3d at 942 (holding officer's entry into defendant's home was justified by exigent circumstances and firearms were seized in plain view); Arcobasso, 882 F.2d at 1307 (same).

Because the officers properly arrived at the locations from which they viewed the evidence, the incriminating nature of the evidence was readily apparent, and the officers had a lawful right of access to the evidence, the evidence at 9821 Goldman Road properly was seized.

## IV.   CONCLUSION

The entry and search of 9821 Goldman Road was pursuant to the voluntary consent of Lillian Goldsberry, and further was justified by exigent circumstances and as a protective sweep. Therefore, defendant's motion to suppress evidence should be denied.

        Respectfully submitted,

        RICHARD G. CALLAHAN
        United States Attorney

        s/ *Cristian M. Stevens*
        CRISTIAN M. STEVENS (#48028MO)
        Assistant United States Attorney
        111 South Tenth Street, Room 20.333
        St. Louis, Missouri 63102
        (314) 539-2200

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system this 11th day of July, 2014, to Brian Witherspoon, Assistant Federal Public Defender, 1010 Market Street, Suite 200, St. Louis, MO 63101.

        s/ *Cristian M. Stevens*
        Assistant United States Attorney