UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14CR91 AGF |
| | ) | |
| JODY GOLDSBERRY, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S**
**OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT**

COMES NOW the United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Cristian M. Stevens, Assistant United States Attorney for said District, and responds to defendant's objections to presentence investigation report (Doc. #121).   In support of its response, the Government states as follows:

**I.   ARGUMENT**

In his objections to the presentence investigation report (PSR), defendant offers a variety of arguments, all without legal support.   For the following reasons, defendant's objections should be denied.

**A.   The Indictment Need Not Contain a Citation to 18 U.S.C. §924(e).**

Defendant's first objection, to paragraph 1 of the PSR, is that the indictment does not contain a citation to 18 U.S.C. §924(e), the Armed Career Criminal Act, pursuant to which defendant will be sentenced.   Motion ¶1.

1

First, pursuant to Federal Rule of Criminal Procedure 7(c)(1), an indictment need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1); Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Nabors, 45 F.3d 238, 239 (8th Cir. 1995). Rule 7(c)(1) further requires a citation to the statute violated, as is contained in the instant indictment, but there is no requirement that the indictment contain a citation to the statute pursuant to which the defendant will be sentenced.

Furthermore, the Supreme Court unequivocally has held that sentencing factors, such as defendant's status as an armed career criminal, need not be included in an indictment. See Almendarez-Torres v. United States, 523 U.S. 224 (1998). Suffice it to say that controlling Supreme Court and Eighth Circuit caselaw forecloses defendant's objection. See United States v. Daniels, 775 F.3d 1001, 1005-06 (8th Cir. 2014); United States v. Abrahamson, 731 F.3d 751 (8th Cir. 2013).

**B.   Lillian Goldsberry Was the Victim of the Offense.**

Next, defendant objects to the reference in paragraph 14 of the PSR to his mother, Lillian Goldsberry, as the victim of the offense. Motion ¶2. The Government will establish by a preponderance of evidence at the sentencing hearing that Mrs. Goldsberry was the shooting victim of defendant's possession and discharge of a firearm. See United States v. Cruz-Zuniga, 571 F.3d 721, 726 (8th Cir. 2009) ("Sentencing judges are only required to find sentence-enhancing facts by a preponderance of the evidence."); United States v. Villareal-Amarillas, 562 F.3d 892, 894-98 (8th Cir. 2009) (reaffirming that sentencing facts are found by preponderance-of-evidence standard).

**C.   Defendant is Not Entitled to a Decrease for Acceptance of Responsibility.**

Defendant objects that the PSR did not credit him with a reduction in his offense level for acceptance of responsibility.   Motion ¶3.   Sentencing Guidelines §3E1.1(a) provides for a two-level decrease for acceptance of responsibility when "the defendant clearly demonstrates acceptance of responsibility for his offense."   U.S.S.G. §3E1.1(a).   Section 3E1.1(b) further provides for an additional one-level decrease upon motion of the Government certifying that the defendant "has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intent to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently."   U.S.S.G. §3E1.1(b).   The Government cannot so certify in this case.   Therefore, the only issue is whether defendant is entitled to a two-level decrease pursuant to §3E1.1(a).

The commentary to §3E1.1 sets forth some considerations in determining whether defendant has accepted responsibility.   They include "not falsely denying any additional relevant conduct," "voluntary surrender to authorities promptly after commission of the offense," "voluntary assistance to authorities in the recovery of the . . . instrumentalities of the offense," and "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility." U.S.S.G. §3E1.1, cmt. n.1.   None of these considerations favors a reduction for acceptance of responsibility.   See United States v. Lee, 625 F.3d 1030, 1035 (8th Cir. 2010) (quoting §3E1.1, commentary note 1(A), for proposition that "where a defendant falsely denies, or frivolously contests, relevant conduct that the court determines to be true, a district court should find that the defendant has acted in a manner inconsistent with acceptance of responsibility"); United States v. Sawyers, 963 F.2d 157, 162 (8th Cir. 1992) ("Since [defendant] took none of the actions listed in

the commentary to U.S.S.G. §3E1.1, we do not find that the district court was clearly erroneous in holding that [defendant] did not demonstrate recognition and affirmative acceptance of personal responsibility for his criminal conduct.").

After shooting his mother, Lillian Goldsberry, on January 29, 2013, defendant was nowhere to be found.  PSR ¶7.  Defendant was listed as one of the Jefferson County Sheriff's Department's "Ten Most Wanted," and was on the run for nearly five months.  He finally was apprehended on June 20, 2013, after fleeing from officers and resisting arrest.  PSR ¶10.  The .45 caliber pistol defendant used to shoot Lillian Goldsberry has not been recovered.

The federal grand jury indicted defendant more than two years ago, on March 27, 2014. After defendant requested and received multiple continuances, the Court set a trial date of April 27, 2015.  The Court further ordered the parties to timely file pretrial materials and to appear at a pretrial conference on April 17, 2015.  Order of March 27, 2015 (Doc. #49).  The Government filed its pretrial materials, including multiple notices and motions in limine, and began preparation for trial.  The parties then appeared at a nearly four-hour pretrial conference on April 17, 2015, at which they argued, and the Court considered, numerous pretrial issues.  (Doc. #64).  Shortly thereafter, defendant requested the Court set a change of plea hearing.

On April 24, 2015, after a lengthy and contentious hearing, defendant pleaded guilty. Less than one month later, defendant filed a pro se motion seeking to terminate his lawyer, withdraw his guilty plea, and dismiss the case.  Motion of May 20, 2015 (Doc.# 71).  After several hearings, the Court permitted defendant to terminate his lawyer.  Order of June 15, 2015 (Doc.#74).  The Court further found that defendant's statements to the Court were persistently incredible and, therefore, permitted defendant to withdraw his guilty plea.  Order of August 21, 2015 (Doc.# 89); see United States v. Morris, 139 F.3d 582, 584 (8th Cir. 1998) (deferring to

district court's "opportunity to observe [defendant's] demeanor both at the plea hearing and at sentencing" in denying acceptance-of-responsibility reduction); United States v. Hawkins, 78 F.3d 348, 352 (8th Cir. 1996) ("The determination whether a defendant has accepted responsibility is a factual one, depending largely on credibility assessments by the sentencing judge . . ..").

The Court ultimately set a new trial date of February 1, 2016, and another pretrial conference on January 28, 2016.  The Government renewed its preparations for trial, and filed additional pretrial materials, including pretrial notices and proposed jury instructions.  At the conclusion of the more than three-hour pretrial conference, defendant decided to plead guilty again.  He did so without entering into a plea agreement, and admitted only generically the elements of the charged offense.  See Morris, 139 F.3d at 584 (concluding nature of defendant's guilty plea is appropriate factor in denying acceptance-of-responsibility reduction).

Finally, in his instant objections, defendant continues to deny such operative facts as: that his mother was a victim of the offense; that he lived at 9821 Goldman Road; that he, as opposed to his mother, possessed the firearms at the residence; and that the firearms were part of any criminal offense.  Motion ¶¶ 2, 12, 14.  The result will be a contested sentencing hearing, at which both the Government and the Court will continue to expend considerable resources.  See United States v. Knight, 96 F.3d 307, 310 (8th Cir. 1996) (affirming district court's denial of acceptance-of-responsibility reduction because, although defendant pleaded guilty, he later denied involvement in the offense); United States v. Behr, 33 F.3d 1033, 1037 (8th Cir. 1994) ("The district court found that [defendant] at no time admitted that any of his actions were wrong, and we see no reason to question this finding."); United States v. Silva-Cintora, 2 Fed. Appx. 627, 628 (8th Cir. 2001) (unpublished) (affirming district court's denial of acceptance-of-responsibility reduction because defendant minimized involvement in offenses).

For all of these reasons, defendant is not entitled to a reduction for acceptance of responsibility.

**D.   Defendant Is an Armed Career Criminal.**

Defendant objects generally to his status as an armed career criminal and, more specifically, that each of his qualifying prior convictions "did not include any aspect of violence or a threat of violence."   Motion ¶¶ 4, 6, 7, 11.   Defendant's argument is unsupported by any legal citation.

Pursuant to 18 U.S.C. §924(e), the Armed Career Criminal Act (ACCA), defendant qualifies as an armed career criminal if he has three previous convictions for a violent felony.   A "violent felony" is defined, in pertinent part, as any felony crime that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another," or "(ii) is burglary."   18 U.S.C. 924(e)(2)(B).

Defendant's first predicate violent felony is his conviction for burglary second degree, set forth in paragraph 29 of the PSR.   The Government will offer a certified copy of that conviction at the sentencing hearing.

Given the plain language of §924(e), defendant's burglary conviction obviously would appear to qualify as a violent felony.   Unfortunately, the analysis is not so simple due in large part to the Supreme Court's very recent decision in Mathis v. United States, No. 15-6092, 2016 WL 3434400 (June 23, 2016).

Mathis addresses the availability of the modified categorical approach to determine whether a defendant's prior conviction qualifies as a predicate felony under the ACCA. The Mathis defendant's ACCA eligibility turned on whether his prior convictions for burglary under Iowa law qualified as "generic" burglary, and thus were violent felonies, under §924(e)(2)(B)(ii).

6

The Iowa statute defined burglary, in part, as the unlawful entry into an "occupied structure, and then defined "occupied structure" in another statute as including buildings, structures, and motor vehicles. Mathis, 2016 WL 3434400, at *14 (Breyer, J., dissenting).

On direct appeal from the district court, the Eighth Circuit had held that although the Iowa statute swept more broadly than generic burglary – because it included unlawful entries into vehicles, in addition to buildings and structures – the statute was divisible. The Eighth Circuit applied the modified categorical approach, which established that the defendant had burglarized a structure, not a vehicle. Therefore, the burglary convictions qualified as violent felonies and ACCA predicates. See United States v. Mathis, 786 F.3d 1068, 1071-75 (8th Cir. 2015).

The Supreme Court reversed, holding that a conviction for violating a statute that is phrased in the alternative and that sweeps more broadly than the ACCA's definition of a violent felony may qualify as an ACCA predicate if, and only if, the statute establishes alternative <u>elements</u> (which define the constituent parts of a crime and must be proved beyond a reasonable doubt) and not alternative <u>means</u> for satisfying an element (which the court characterized as "brute facts" having no legal consequences).

Where a statute establishes alternative elements and not alternative means for satisfying an element, a sentencing court may employ the modified categorical approach. "The first task for a sentencing court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means." Mathis, 2016 WL 3434400, at *10. "If they are elements," the sentencing court should "review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction, and then compare that element (along with all others) to those of the generic crime." Id.

The Court concluded that the "first task" – distinguishing elements and means – "is easy in

7

this case" and "will be in many others."  Id.  A sentencing court must first look to authoritative state law, including state court decisions and the statutory language.  If statutory alternatives carry different punishments, for example, they are elements, but if they are merely illustrative examples, they are means.  In the case of the Iowa burglary statute, there was a definitive opinion from the Iowa Supreme Court stating that each of the alternatives set out in the Iowa statute were an alternative method of committing the single crime of burglary, so that a jury need not agree on which of the alternatives had been committed by the defendant.  See State v. Duncan, 312 N.W.2d 519, 523 (Ia. 1981).  The existence of this Iowa Supreme Court decision permitted the Supreme Court in Mathis to conclude that the Iowa statute listed alternative "means" rather than alternative "elements" for committing the single crime of burglary.

If state law fails to provide a clear answer, sentencing courts may look to the record of conviction for guidance.  According to the Mathis Court, for example, an indictment charging a defendant with burglarizing a "building, structure, or vehicle" is "as clear an indication as any that each alternative is only a possible means of commission."  Mathis, 2016 WL 3434400, at *11.  If there is not a clear answer regarding the means-versus-elements inquiry, the ACCA will not apply.  But according to the Court, "that kind of indeterminacy should prove more the exception than the rule."  Id.

According to Mathis, this Court must determine whether the Missouri burglary second degree statute has alternative elements (which define the constituent parts of a crime and must be proved beyond a reasonable doubt), or whether it has alternative means for satisfying an element.

First, the undersigned can find no reported decision of the Missouri Supreme Court or the Missouri Court of Appeals that is comparable to the Iowa Supreme Court case cited in Mathis.  If the answer cannot be found in state court decisions, Mathis refers us to the language of the statute.

The Missouri statute pursuant to which defendant was convicted of burglary second degree provides:  "A person commits the crime of burglary in the second degree when he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein."   Mo. Rev. Stat. § 569.170.

Importantly, the Missouri Supreme Court Model Approved Instruction (MAI-CR 3d) for burglary second degree in violation of § 569.170 states:

> As to Count ____, if you find and believe from the evidence beyond a reasonable doubt:
>
> *First*, that on or about (insert date), the defendant knowingly (entered) (remained) unlawfully (in) (a building) (an inhabitable structure) located at [*briefly describe the location*] and (owned) (possessed) by [*insert name of owner or possessor*]; and
>
> *Second*, that defendant did so for the purpose of committing the crime of [*insert name of crime*] therein,
>
> Then you will find the defendant guilty (under Count ____ ) of burglary in the second degree.

MAI-CR 3d 323.54.

Use of an applicable instruction in the MAI-CR 3d is required under Missouri state law, and failure to use an applicable MAI-CR instruction is reversible error.  Thus, an MAI-CR instruction is a definitive statement of what constitutes the elements of an offense under Missouri state law.  Mathis explicitly states that jury instructions are an authoritative source of determining whether an alternative listing in a statute refers to elements or means.  See Mathis, 2016 WL 3434400, at *11.

Based on the structure of MAI-CR 3d 323.54, it seems clear that the two terms set out in the Missouri burglary second degree statute – "building or inhabitable structure" – are alternative "elements" (which define the constituent parts of a crime that must be proved beyond a reasonable

9

doubt), and not alternative "means" for satisfying an element.  A jury is required to find as an element of the offense that the location of the crime was either in a building *or* in an inhabitable structure, but not both.  Whichever alternative is listed in the instruction, either building or inhabitable structure, MAI-CR 3d 323.54 makes plain that the jury can convict only if it finds beyond a reasonable doubt that the crime was committed in the specified location.

This conclusion is reinforced by the form of MACH-CR 23.54, the pattern charge for burglary in the second degree, which requires the prosecution to allege that "the defendant knowingly entered or remained unlawfully "in (a building) (an inhabitable structure)" for the purpose of committing some crime therein.  Again, the pattern charge clearly treats the two edifices, "building" or "inhabitable structure," as separate and distinct elements.

This conclusion is further supported by the statutory definition of "inhabitable structure," which is defined as "a ship, trailer, sleeping car, airplane, or other vehicle or structure: (a) where any person lives or carries on business or other calling; or (b) where people assemble for purposed of business, government, education, religion, entertainment or public transportation; or (c) which is used for overnight accommodation of persons.  Any such vehicle or structure is inhabitable regardless of whether a person is actually present."  Mo. Rev. Stat. § 569.010(2) (2013).

The definition of inhabitable structure obviously reaches more broadly than the generic offense of burglary, which, under Taylor v. United States, 495 U.S. 575 (1990), is the only type of burglary that can be used for sentence enhancement under the ACCA.  Generic burglary requires unlawful entry into a building.  See id. at 598.  The term "inhabitable structure," under Missouri state law, could reach a broader range of places than a building:  an offense committed in a sleeping car or airplane, for example, falls within the scope of the statute.

Under Mathis, the definition of inhabitable structure clearly contains alternative means for

satisfying the inhabitable-structure element of the crime. However, a parallel set of alternative means does not exist when the crime is committed in a building. There is no expansive or flexible definition of "building" that takes it outside the scope of generic burglary.

In the words of Mathis, the Missouri burglary second degree statute lists "multiple elements disjunctively," i.e., building or inhabitable structure, but then also "enumerates various factual means of committing" the alternative element of burglary of an inhabitable structure. Mathis, 2016 WL 3434400, at *4. Mathis would thus seem to mean that a Missouri conviction for burglary second degree of an inhabitable structure cannot be a predicate offense under the ACCA. However, a Missouri conviction for burglary second degree of a building is a predicate offense under the ACCA, because the elements of burglary of a building are not broader than those of generic burglary.

A review of Taylor removes any remaining doubt about whether a conviction under Mo. Rev. Stat. § 569.170 for burglary of a building remains a valid generic burglary predicate for ACCA purposes. The statute at issue in Taylor was precisely the Missouri burglary second degree statute at issue here. Taylor is the case that created the "generic burglary" test for ACCA enhancement purposes. Immediately prior to stating its holding that an ACCA enhancement for burglary can only be applied where the burglary statute "substantially corresponds to generic burglary or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary," the Taylor court said this:

> For example, in a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement. Taylor, 495 U.S. at 602.

The Taylor Court could not be clearer that a Missouri conviction for burglary second degree of a

building remains a predicate offense under the ACCA, even after <u>Mathis</u>.

Applying all of this to the instant case, the Court will find that, as set forth in paragraph 29 of the PSR, defendant was charged with, and pleaded guilty to, burglary second degree of a building. Burglary second degree of a building remains a "violent felony" for purposes of the ACCA.

Defendant's second and third prior violent felonies are his convictions for assault of a law enforcement officer second degree, set forth in paragraphs 32 and 40 of the PSR. The Government will offer certified copies of those prior convictions at the sentencing hearing.

Similarly, defendant's two prior Missouri convictions for assault second degree, in which he knowingly attempted to cause physical injury to law enforcement officers by means of a dangerous instrument (attempting to run them down with a car), are "violent felonies." Each of the assaults "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). That much is clear from the text of Missouri's statute prohibiting assault of a law enforcement officer second degree. <u>See</u> Mo. Rev. Stat. § 565.082 ("A person commits the crime of assault of a law enforcement officer . . . in the second degree if such person . . . [k]nowingly causes or attempts to cause physical injury to a law enforcement officer . . . by means of a deadly or dangerous instrument").

Furthermore, the Eighth Circuit has confirmed that Missouri's assault second degree statute, the language of which is virtually identical to the statute at issue here, "has as an element the use, attempted use, or threatened use of physical force against the person of another." <u>See</u> <u>United States v. Linngren</u>, 652 F.3d 868, 877-78 (8th Cir. 2011); <u>United States v. Vinton</u>, 631 F.3d 476, 484-86 (8th Cir. 2011). Accordingly, defendant's prior convictions for assault of a law

enforcement officer second degree are violent felonies, and defendant qualifies as an armed career criminal.

**E.   The PSR Accurately Assesses an Increase for Possession of at Least Three Firearms.**

Defendant objects that he did not plead guilty to possessing three or more firearms and, therefore, should not be subject to the two-level increase, pursuant to Sentencing Guidelines §2K2.1(b)(1)(A), assessed in paragraph 19 of the PSR.   Motion ¶5.   The Government will establish by a preponderance of evidence at the sentencing hearing that defendant possessed at least three firearms.

**F.   The PSR Accurately Assesses One Criminal History Point for Defendant's Prior DWI.**

Defendant's next objection is that paragraph 33 of the PSR erroneously assesses one criminal history point for his prior Driving While Intoxicated conviction, which defendant asserts is a municipal ordinance violation.   Motion ¶8.   Contrary to defendant's argument, "[c]onvictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are always counted, without regard to how the offense is classified."   U.S.S.G. §4A1.2, cmt. n.5.

In any event, the subtraction of a single criminal history point would not impact defendant's sentence.   As set forth in paragraph 47 of the PSR, defendant has accumulated 20 criminal history points, well over the 13 required to place him in category VI, the highest criminal history category.   Moreover, paragraph 48 of the PSR establishes that, regardless of defendant's criminal history points, he would remain in criminal history category VI by virtue of his status as an armed career criminal.

**G.   The PSR Accurately Counts Defendant's Prior Convictions.**

Defendant objects that his prior convictions for driving with a revoked license and excessive blood alcohol content, which are set forth in paragraphs 35 and 37 of the PSR, were "dismissed."  Motion ¶¶9, 10.  Defendant's argument may stem from a simple misunderstanding that the suspended execution of his sentences in those cases amounts to "dismissal" of the charges.  Regardless, because defendant received a two-year term of probation for each of those offenses, the PSR properly assessed a single criminal history point for each conviction, pursuant to Sentencing Guidelines §4A1.1(c).

As explained above, the subtraction of these two criminal history points would not impact defendant's criminal history category.

**H.   Defendant Lived at 9821 Goldman Road.**

Defendant, still seeking to avoid responsibility for his actions, maintains that he did not live at 9821 Goldman Road in and around January 2013.  Motion ¶12.  The Government will prove otherwise by a preponderance of evidence at the sentencing hearing.

**I.   The PSR Accurately Summarizes Defendant's Tax History.**

Defendant objects to paragraph 73 of the PSR, which merely states that there is "[n]o record on file" for tax year 2012.  Motion ¶13.  Defendant claims that he did not work, earned no income, and paid no income tax in 2012.  Regardless whether defendant worked in 2012, the PSR accurately indicates that there is no record for 2012.

**J.   Defendant Unlawfully Possessed the Firearms Seized from 9821 Goldman Road.**

Defendant objects that the firearms seized from his residence belong to his mother, were not used in the commission of any offense, were improperly and unlawfully seized, and are not the subject of federal jurisdiction.  He also suggests, yet again, that the Government's willingness to

consider turning some of the firearms over to defendant's mother amounts to an admission that defendant did not own or possess the firearms. Defendant, yet again, fails to accept responsibility for his actions.

The Government will prove by a preponderance of the evidence at sentencing that defendant actually and constructively possessed the firearms seized from 9821 Goldman Road, as well as other firearms. To the extent defendant seeks to challenge the lawfulness of the seizure of his firearms, he has waived such a challenge. See Fed. R. Crim. P. 12(c); United States v. Garrett, 961 F.2d 743, 748 (8th Cir. 1992).

Finally, apparently based on his allegation that the firearms were "improperly and unlawfully seized," defendant objects to "the firearms being held any longer by the government," and seeks an order directing that the firearms be returned to his mother. See Fed. R. Crim. P. 41(g) ("A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return.").

Defendant is not entitled to the return of his firearms for a variety of reasons. First, the firearms remain evidence in a criminal case, and will remain so throughout any appeals. See Rodgers v. Allen, 781 F.3d 932, 941 (8th Cir. 2015); United States v. Bailey, 206 Fed. Appx. 650654 (8th Cir;. 2006). Second, if, as defendant insists, he did not reside at 9821 Goldman Road, then he cannot demonstrate that had a reasonable expectation of privacy in that residence. Therefore, he lacks what is commonly referred to as "standing" to demand return of the firearms. See Minnesota v. Carter, 525 U.S. 83 (1998); United States v. Sturgis, 238 F.3d 956, 958-59 (8th Cir. 2001). Finally, before the firearms may be transferred to defendant's mother, defendant must establish that his mother intends to prevent (and, more importantly, has the wherewithal to

15

prevent) defendant from possessing or otherwise exerting any control over them.   See Henderson v. United States, 135 S.Ct. 1780, 1786-87 (2015).

For these reasons, defendant's objections to the presentence investigation report should be denied.

## II.   CONCLUSION

WHEREFORE, the Government respectfully requests that this Court deny defendant's objections to the presentence investigation report.

> Respectfully submitted,
>
> RICHARD G. CALLAHAN
> United States Attorney
>
> s/ *Cristian M. Stevens*
> CRISTIAN M. STEVENS (#48028MO)
> Assistant United States Attorney
> 111 S. Tenth Street, Room 20.333
> St. Louis, Missouri 63102
> (314) 539-2200

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system this 15th day of July, 2016, to defense counsel, Henry M. Miller, 7733 Forsyth Blvd., Suite 1850, St. Louis, Missouri 63105.

                                     s/ *Cristian M. Stevens*
                                     ASSISTANT UNITED STATES ATTORNEY